**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-05-643 (2) |
| | § | C.A. No. C-08-77 |
| MIGUEL RUIZ, JR., | § | |
|     Defendant-Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Miguel Ruiz, Jr's ("Ruiz") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, with supporting memorandum. (D.E. 116, 117.)[1] Also before the Court is the government's response, which moves for the dismissal of Ruiz's motion. (D.E. 125, 126.) Ruiz was permitted an extension of time to reply, and the Court has considered a letter sent by Ruiz, as well as a document filed October 20, 2008, which was titled as a reply. (D.E. 134, 139.) For the reasons set forth below, Ruiz's § 2255 motion is DENIED. Additionally, the Court DENIES Ruiz a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entry references are to the criminal case, Cr. No. C-05-643. Ruiz filed two motions on the same date that assert different grounds for relief, and the Court construed them as a single § 2255 motion in its response order. (See D.E. 119 at 1.)

1

## II. BACKGROUND

**A.     Facts of the Offense[2]**

On November 4, 2004, a 2004 Dodge Stratus with two occupants, Crystal Paulino and Ofelia Cristina Villarreal, arrived at the Falfurrias, Texas Border Patrol Checkpoint. After a drug canine at the scene alerted to the vehicle, the driver consented to a further search. In the secondary inspection area, the canine alerted to a nylon and vinyl ice chest/cooler in the vehicle. Paulino consented to a search of the cooler, but informed the agents that there was nothing but cokes inside. After agents removed the cokes and ice, they found a tear on the side panel. Upon opening the panel, agents found two bundles of cocaine wrapped in brown postal tape concealed inside. The bundles contained a net weight of 1.98 kilograms (86% purity) of cocaine, with an estimated value of $160,000. Both Paulino and Villarreal were arrested.

In another incident at the Sarita, Texas Border Patrol Checkpoint, on October 2, 2005, agents located an ice cooler containing five bundles of cocaine. The bundles of cocaine had a net weight of 4.83 kilograms and an estimated value of $416,000. The driver of the vehicle, David De La Rosa, was arrested.

Through further investigation and debriefings, DEA agents learned that Ruiz, Jr. had transported cocaine for his father, Miguel Ruiz, Sr. since July 2004, and that Ruiz had recruited both Paulino and De La Rosa to transport cocaine. Agents also learned that Ruiz, Jr. had followed De La Rosa and Paulino to Louisiana on several occasions when they were transporting cocaine, and that on a2 or 3 occasions Ruiz Jr. obtained kilograms of cocaine at a home in Reynosa, Mexico.

---

[2] These facts are taken from Ruiz's Presentence Investigation Report ("PSR") at ¶¶ 4-12.

**B.**     **Criminal Proceedings**

On May 10, 2006, Ruiz was charged in a two-count second superseding indictment with: (1) possession with intent to distribute approximately 4.83 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count One); and (2) conspiracy to possess with intent to distribute approximately 4.83 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) , and 846  (Count Two). (D.E. 20.)  On August 15, 2008, the United States filed a notice of prior conviction and notice of its intent to seek an enhanced punishment pursuant to 21 U.S.C. § 851.  (D.E. 79.)  On August 18, 2006, Ruiz pleaded guilty to Count 1s.  There was no written plea agreement.  (D.E. 81.)  Upon motion of the United States, the Court dismissed Count Two of the superseding indictment at that time.  (D.E. 82, 86.)

Pursuant to the Court's instructions (D.E. 85), the probation department prepared a Presentence Investigation Report ("PSR"). (D.E. 92.) The PSR calculated Ruiz's base offense level to be 32, based on a total of 6.81 kilograms of cocaine.  (PSR at ¶ 18.)  The PSR increased his offense level by 3 pursuant to U.S.S.G. § 3B1.1(c), finding that he was a manager/supervisor of criminal activity that involved five or more participants or was otherwise extensive. (PSR at ¶ 21.) It gave him a two-level adjustment for acceptance of responsibility, resulting in a total offense level of 33. (PSR at ¶¶ 24-25.)   The PSR, however, also determined that Ruiz was a career offender within the meaning of U.S.S.G. § 4B1.1, which made his offense level a 37.  After a two-level adjustment for acceptance of responsibility, the resulting total offense level was determined to be a 35.  (PSR at ¶¶ 26-28.)  Additionally, both because of his status as a career offender and because he had a total of 19 criminal history points, Ruiz's criminal history category was determined to be a VI.  (PSR at ¶ 49.)  The resulting guideline range was 292 to 365 months.  (PSR at ¶ 63.)

Ruiz was sentenced on November 3, 2006. At the beginning of the sentencing proceeding, Ruiz's attorney disclosed to the Court that, prior to Ruiz's guilty plea, counsel had misadvised Ruiz about his sentencing exposure. (D.E. 105, Sentencing Transcript ("S. Tr.") at 5.) Specifically, Mr. Gilmore stated that he had told Ruiz that if he pleaded guilty, his likely sentencing level would be 34, when in fact his sentencing level was 37 due to the career offender enhancement. (S. Tr. at 5-6.) The Court gave Ruiz the opportunity to withdraw his guilty plea after learning about this, but Ruiz indicated that he did not want to withdraw his plea. (S. Tr. at 8-9.) The AUSA and defense counsel agreed, however, that it would be appropriate, under the factors in 18 U.S.C. § 3553A, to sentence Ruiz at a level 34, and with acceptance, at a level 32. (S. Tr. at 7-8.) The Court did so, finding that the appropriate guideline range was a 32. (S. Tr. at 9-10.) Coupled with his criminal history of VI, Ruiz's guideline range for a term of imprisonment was 210 to 262 months, and the Court sentenced him to 210 months. (S. Tr. at 9, 13.)

Ruiz filed a timely notice of appeal, by and through new counsel, Reynaldo A. Pena. (D.E. 97.) On appeal, his retained counsel moved for leave to withdraw and filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967). Ruiz filed a response. As to Ruiz's claim of ineffective assistance of counsel, the Fifth Circuit concluded that the record was insufficiently developed to allow that claim to be addressed. (D.E. 112 at 1.) The appellate court found no nonfrivolous issues for appeal, and thus granted the motion to withdraw and dismissed the appeal. (D.E. 112.) That Order was filed October 25, 2007. Ruiz did not file a petition for writ of certiorari.

Ruiz's § 2255 motion was received by the Clerk on March 4, 2008. (D.E. 116, 117.) It is timely.

### III. MOVANT'S ALLEGATIONS

Ruiz lists a total of six different grounds for relief in his two motions. His first three grounds, however, are related. Specifically, he claims that he was denied effective assistance of counsel because, on the day of his sentencing, he told Mr. Gilmore that he wanted to appeal and Mr. Gilmore told him to just accept the plea. (D.E. 117 at 5.) He claims that he was told by Mr. Gilmore that if he appealed he would get thirty years and that Mr. Gilmore would not help him to appeal, which is what he wanted to do. His third claim is titled as alleging that his conviction was obtained by a plea of guilty which was unlawfully induced due to "improper counsel." (D.E. 117 at 5.) In support of his claim, however, he does not appear to be challenging his guilty plea. He alleges only that he was told by Mr. Gilmore that it was not necessary to appeal because he "would definitely get 30 yrs to life" and that Mr. Gilmore "did not give [him] proper counsel at all." (D.E. 117 at 5.)

His fourth ground for relief is that his counsel made "misrepresentations." The entirety of the factual support for this claim is as follows:

> Mr. John Gilmore did not at any time during my sentencing give me the proper counsel or advice that I needed. He told me to do things that I did not want to do. He put the fear in me and scared me by telling me that I would get 30 yrs to life if I fought it. Did not try to help me in anyway defeat my conviction. [sic]

(D.E. 117 at 6.)

Ruiz's fifth and sixth claims, both listed in D.E. 116, are similarly related to each other. In his fifth claim, Ruiz alleges that there was a "conflict of interest" because two of his co-conspirators had the same attorney and they both "came up with the exact story against [Ruiz] to the DEA." (D.E. 116 at 5.) In his sixth claim, he argues that there was "double jeopardy" because the same

attorney represented these two co-defendants and the United States tried to "pin Count 2 on [Ruiz] for something [he knew] nothing about." (D.E. 116 at 6.)

In his prayer for relief, Ruiz asks that his case be "brought back in front of a judge" and that new attorneys be appointed to represent him. (D.E. 116 at 14.) As discussed in detail herein, Ruiz is not entitled to relief on any of his claims.

## IV.  DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.     Ineffective Assistance of Counsel**

**1.     General Standards**

Most of Ruiz's claims are claims of ineffective assistance of counsel. Such claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was

both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 2. Counsel's Alleged Deficiencies

Ruiz's first four claims seem to overlap in significant ways. They all claim that his counsel was somehow ineffective and appear to relate either to his appeal or the voluntariness of his plea. For example, there are repeated references to an "appeal" and the fact that his counsel John Gilmore discouraged him from appealing and refused to assist him in an appeal. To the extent he is claiming that Mr. Gilmore failed to appeal, Mr. Gilmore disputes that assertion. (See D.E. 125, affidavit of John Gilmore, at 1.) In any event, even if Ruiz had requested that Mr. Gilmore appeal, and Mr. Gilmore failed to do so, there is no prejudice to Ruiz, because he retained alternative counsel who prosecuted an appeal on his behalf. Although the Fifth Circuit ultimately concluded that there were no non-frivolous issues for appeal and granted his retained counsel's motion to withdraw, Ruiz had the benefit of counsel on appeal. Thus, he was not deprived his right to appeal, and is not entitled to relief as to any claim that Mr. Gilmore refused to appeal.

Construed liberally, however, Ruiz may also be misusing the term "appeal" to mean he wanted to challenge his guilty plea. That is, he repeatedly claims that Mr. Gilmore told him not to "appeal," or that he would get 30 years to life, but perhaps he means that counsel told him not to challenge issues at sentencing, and not to withdraw his plea, but to simply allow the Court to sentence him. That is, Mr. Gilmore likely advised Ruiz that if he went to trial, he could receive 30 years to life for a sentence, a fact that was brought to Ruiz's attention at sentencing, as well. (S. Tr. at 5.) So construed, his third and fourth claims also relate to and seem to be making the same claim.

To the extent he is challenging his counsel's advice to not withdraw his plea at sentencing (or to plead guilty initially), his claim fails because of his own testimony at sentencing. The Court informed Ruiz of his ability to withdraw his guilty plea and proceed to trial. He elected not to withdraw his guilty plea. Notably, he received a considerably lower sentence than if he had gone to trial and been found guilty, and indeed, a considerably lower sentence than the PSR originally recommended. It is thus easy to understand counsel's advice to Ruiz not to withdraw his guilty plea. Accordingly, the Court concludes that counsel was not deficient in giving that advice to Ruiz. Because he cannot show any deficiency, his ineffective assistance claims relating to counsel's advice not to withdraw his guilty plea fail.

Finally, to the extent Ruiz is complaining that his counsel gave him erroneous information about his likely sentence were he to plead guilty, that claim is belied by his testimony at his own rearraignment. In particular, Ruiz told the Court that he understood that if he pleaded guilty, he could receive a sentence of up to life imprisonment. Ruiz told the Court he understood and nonetheless elected to plead guilty. (R. Tr. at 19.) Moreover, Ruiz cannot show prejudice from the misinformation because he was in fact sentenced as counsel had advised him. (Put differently, it

turned out *not* to be misinformation, based on the Court's sentencing decision.) As noted, the fact that Mr. Gilmore had incorrectly advised Ruiz regarding his sentencing exposure was brought to the Court's attention before sentencing. Significantly, the Court took that information into account when determining that the lower guideline range was appropriate. Thus, Ruiz has not shown any prejudice from any such mistakes by counsel.

### C.      Claims of "Conflict of Interest" and "Double Jeopardy"

In both Ruiz's fifth and sixth claims, he complains that two of his co-conspirators who debriefed against him were represented by the same attorney. Ruiz seems to be suggesting that the attorney either created a false story for these two witnesses to recount or encouraged or otherwise assisted them in coordinating their factual statements to the DEA. As noted by the government, this claim is based on pure conjecture and finds no support in the record, other than Ruiz's conclusory allegation. These claims thus fail.

Additionally, Ruiz asserts that "double jeopardy" occurred because he was unfairly punished for additional conduct that he did not plead guilty to. (See D.E. 116 at 6 ("the United States tried to "pin Count 2 on [Ruiz] for something [he knew] nothing about.").) He elaborates on this point in his reply, arguing that he should only have been held responsible for 4.83 kilograms of cocaine, the amount he pleaded guilty to, and not the additional amounts he was held responsible for as relevant conduct. (D.E. 139 at 5.) As an initial matter, it is clear that the inclusion of additional drugs involved in a conspiracy for purposes of relevant conduct does not constitute "double jeopardy."

Moreover, his claim that he did not understand he could be sentenced based on a higher amount of drugs than the amount he was pleading to is flatly contradicted by his testimony at his

rearraignment. At that time, he told the Court he had discussed with his attorney the concepts of relevant conduct, and that he understood them. (R. Tr. at 21-22.) Indeed, he was expressly informed that the amount would be over five kilograms. It was not deficient of his counsel not to object to the additional drug amounts, as they were properly included. Additionally, Ruiz has failed to show prejudice, because the result of the sentencing would not have been different had counsel objected to the inclusion of the additional amount of drugs. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

### D.     Claim of Mental Incompetency

Ruiz also raises for the first time in his reply a claim that his counsel was ineffective because he failed to investigate or raise at sentencing Ruiz's claim that he had a "mental disorder" and that Ruiz's doctors had "verified that the left side of his brain was not functioning." (D.E. 139 at 6.) This claim of ineffective assistance was not raised in either of the § 2255 motions and does not appear to relate back to any of the claims in his original motions. (See generally D.E. 116, 117.) Thus, it is time-barred and not properly before the Court.  Moreover, Ruiz's belated assertion of mental deficiency is belied by the record in this case, in which he repeatedly told the Court he understood the proceedings, and twice specifically told the Court that he believed he was mentally competent to proceed. (R. Tr. at 8-9; S. Tr. at 3.)  This claim fails.

For all of the foregoing reasons, Ruiz's § 2255 motion is DENIED in its entirety.

**E.**     **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Ruiz has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Ruiz's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve

11

encouragement to proceed. 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Ruiz is not entitled to a COA as to any of his claims.

## V.  CONCLUSION

For the aforementioned reasons, Ruiz's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 116, 117) is DENIED. Additionally, Ruiz is DENIED a Certificate of Appealability.

It is so ORDERED this 14th day of November, 2008.

_____
Janis Graham Jack
United States District Judge